# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CADENCE PHARMACEUTICALS, INC. and SCR PHARMATOP,<br><br>　　　　Plaintiffs,<br>vs.<br><br>FRESENIUS KABI USA, LLC,<br><br>　　　　Defendant. | CASE NO. 13-cv-00139 DMS (MDD)<br><br>JOINT MOTION FOR DETERMINATION OF DISCOVERY DISPUTE<br><br>[ECF NO. 145] |

　　　Before the Court is the Joint Motion of Cadence Pharmaceuticals, Inc. and SCR Pharmatop (Plaintiffs), and Fresenius Kabi USA, LLC ("Defendant" or "Fresenius"). (ECF No. 145). The dispute is over whether certain documents, referred to as "the Bichlmaier Documents," are privileged. (*Id.* at 2). Fresenius produced the Bichlmaier Documents in discovery between August and September 2013. (*Id.*). Plaintiffs allegedly relied upon at least one of those documents to support a motion submitted to the District Court on October 15, 2013. (*Id.* at 3) (citing ECF Nos. 145–1 at 2, para. 3 and 99–2, Ex. D [redacted]). On October 17, 2013, Fresenius asserted that the documents were privileged and "clawed–back" the documents. (ECF No. 145–1, Ex. B [redacted]).

　　　Plaintiffs seek production of the Bichlmaier Documents and claim that Fresenius has not established that the documents are privileged or

has waived any privilege. (ECF No. 145 at 2). To the extent that the Court finds that the documents may be privileged, Plaintiffs request *in camera* review of the documents. (*Id.*). Defendant contends that the disputed documents are privileged, *in camera* review is not necessary, and there has been no waiver of the privilege. (*Id.* at 7).

*Factual Summary*

The challenged Bichlmaier Documents are associated with a Fresenius employee, Ingo Bichlmaier. (ECF No. 145 at 2; ECF No. 145–1, Ex. A [redacted]). The challenged documents are identified as items 3–14 on the privilege log that Fresenius submitted as part of its asserted claw–back demand. *(Id.).*

Fresenius asserts that Bichlmaier, one of the Fresenius personnel listed on the challenged documents, was employed as a "patent manager"[1] in the Patent Department of Fresenius Medical Care AG & Co. KGaA ("FMC AG") at the time of the communications at issue. (*Id.* at 8–9). Fresenius provides as evidence the Declaration of Stefan Weiss, a European patent attorney and Director of Patents at FMC AG. (ECF No. 146 at 2). In his Declaration, Weiss describes the role of the FMC AG's Patent Department ("Patent Department") and Bichlmaier's functions during his employment with the company. (*Id.*). Weiss states that the Patent Department is located in Germany, and that its primary role within FMC AG is to "provide intellectual property related advice to various Fresenius entities around the world." (*Id.*). Weiss asserts that Bichlmaier was employed by the Patent Department from April 1, 2008, to December 31, 2010. (*Id.*). At that time, Bichlmaier was training to

---

[1] On October 25, 2013, Fresenius claimed that the disputed documents were privileged because Bichlmaier was a European patent attorney. (ECF No. 145–1, Ex. C [redacted]). On November 19, 2013, Fresenius asserted that Bichlmaier was a "patent manager" working under the direction of patent attorneys. (ECF No. 145 at 3–4).

become a patent attorney. (*Id.*). Weiss asserts that at the time of the communications at issue, Bichlmaier was a "patent manager" at the Patent Department working under his direction, as well as under the direction of other patent attorneys, to "assist in providing and obtaining legal advice."[2] (*Id.* at 2).

Bichlmaier was named as an inventor on several patent applications filed by Fresenius during Bichlmaier's employment with the Patent Department. (ECF No. 145–2 at 3). On October 7, 2009, Bichlmaier e–mailed Alcheitener, one of the inventors of the patent at issue in this case, and opined that he had made an "inventive contribution" to the invention. (ECF No. 145–1, Ex. D [redacted]). Bichlmaier requested Achleitner's opinion about his "inventive contribution" claim, and asked to "retain a symbolic contribution of 5% share in the invention [] or less." (*Id.*).

The communications over which Fresenius asserts attorney–client privilege consist of a series of e–mails Fresenius identified on its October 28, 2013, privilege log. (*See* ECF No. 145–1 at 2; *see also* ECF No. 145–1, Ex. A [redacted]). The e–mails were sent on January 12, 13, February 23, 25, April 20 and 21, 2009. (ECF No. 145–1, Ex A [redacted]). Seven e–mails involved communications between Achleitner and several Fresenius employees. (*Id.*). Bichlmaier was listed as one of the copy recipients on those e–mails. (*Id.*). Five remaining e–mails involved communications between Bichlmaier and Achleitner. (*Id.*). Fresenius describes several e–mails on its privilege log as "reflecting legal advice and analysis" by the Patent Department concerning a "patent search" and "filing a patent application." (*Id.*). The remaining e–mails are

---

[2] It appears that the title "patent manager," as used by Fresenius, is equivalent to "patent agent."

described as "reflecting" and "requesting" legal advice and analysis by the Patent Department concerning the following: filing a patent application, the results of a patent search, and the application of a German statute.  (*Id.*).

# I.
## *Attorney–Client Privilege*
### A. Choice of Law: U.S. or Foreign

The challenged Bichlmaier Documents are foreign documents. Consequently, the determination of the applicability of attorney–client privilege to the challenged documents implicates foreign law issues.

*Legal Standard*[3]

Federal Rule of Evidence 501 provides that questions of privilege in a federal question case are governed by the principles of common law. *Astra Aktiebolag v. Andrx Pharmaceuticals, Inc.*, 208 F.R.D. 92, 97 (S.D.N.Y. 2002).  The "common law," as applied under Rule 501, includes "choice of law questions."  *Id.*

Most courts apply the "touch base" analysis in deciding choice of law issues in cases where the alleged privileged communications occurred in a foreign country or involved foreign attorneys or proceedings.  *See Golden Trade, S.r.L. v. Lee Apparel Co.*, 143 F.R.D. 514, 522 (S.D.N.Y. 1992); *Astra*, 208 F.R.D. at 98; *Gucci America, Inc. v. Guess?, Inc.*, 271 F.R.D. 58, 64–65 (S.D.N.Y. 2010).  Under this approach, a court applies principles of comity in a traditional choice of law

---

[3] A District court deciding issues in a patent case is required to apply the law of the circuit in which it sits with respect to nonpatent issues and the law of the Federal Circuit to the issues of substantive patent law. *Institut Pasteur v. Cambridge Biotech Corp.*, 186 F.3d 1356, 1368 (Fed.Cir. 1999).  Questions of privilege, confidentiality and waiver in a patent suit are generally governed by regional circuit law, rather than the Federal Circuit law.  *In re Pioneer Hi–Bred Int'l Inc.*, 238 F.3d 1370, 1374 (Fed.Cir. 2001).

"contacts" analysis. *See Golden Trade*, 143 F.R.D. at 520–21. A court first determines whether the communication involves or "touches base" with the U.S. or foreign law, and then examines the applicable law for privilege. *Id.*

Courts engaging in the "touch base" analysis defer to the law of the country that has the "predominant" or "the most direct and compelling interest" in whether the challenged communications should remain confidential, unless that foreign law is contrary to the public policy of the forum. *Astra*, 208 F.R.D. at 98 *(citing Golden Trade*, 143 F.R.D. at 522). The country with the "predominant interest" is either "the place where the allegedly privileged relationship was entered into" or "the place in which that relationship was centered at the time communication was sent." *Astra*, 208 F.R.D. at 98.

The inquiry into whether communications "touch base" with the United States or with a foreign jurisdiction is fact–specific and focuses on whether the communications have a "more than incidental" connection with the U.S. *Gucci*, 271 F.R.D. at 67. American law typically applies to communications concerning "legal proceedings in the United States" or "advice regarding American law," whereas foreign privilege law typically governs communications relating to "foreign legal proceeding[s] or foreign law." *Id.* at 65.

In the context of patent law, courts often look to the law of the country where legal advice was rendered or where the patent application is pending. *See Golden Trade*, 143 F.R.D. at 520–21. Communications between a foreign client and a foreign patent agent "relating to assistance in prosecuting patent applications in the United States" are governed by the U.S. privilege law. *Id.* at 520. Communications "relating to assistance in prosecuting" foreign patent applications or

"rendering legal advice … on the patent law" of foreign country are, as a matter of comity, governed by the privilege "law of the foreign country in which the patent application is filed," even if the client is a party to a suit in the U.S. *Id.* (quotation omitted).

The party invoking a foreign privilege has the burden of proving the applicability of the foreign law and must establish that the foreign law protects the communication from discovery. *See id.* at 523–24 (finding that affidavits of German patent attorney sufficiently established confidentiality of communications between Italian corporation and German patent agents). The burden then shifts to the opponent of the privilege to present evidence to contest the existence of the privilege. *See id.* Privilege for foreign patent agent communications should be "strictly construed," and all "doubts should be resolved in favor of disclosure." *See McCook Metals L.L.C. v. Alcoa Inc.*, 192 F.R.D. 242, 256 (N.D. Ill. 2000).

*Discussion*

Plaintiffs seek production of the Bichlmaier Documents because they assert that Fresenius has not established that the documents are privileged. (ECF No. 145 at 2). Plaintiffs argue that the substantive law of the United States applies to the challenged communications because the U.S. has the "'predominant' or 'the most direct and compelling interest' in whether those communications should remain confidential." (*See id.* at 4 n.3) (*citing Astra*, 208 F.R.D. at 98 (citations omitted)).

Fresenius asserts that attorney–client privilege protects the Bichlmaier Documents from disclosure. (ECF No. 145–1, Ex. A [redacted]). Fresenius also relies on *Astra* arguing that Germany has the "predominant interest" in whether the communications are privileged. (*Id.* at 8) (citing *Astra*, 208 F.R.D. at 98). Fresenius claims that German

law applies because the communications and privileged relationship were centered in Germany at the time of the communications, and the disputed documents contain legal advice and information regarding various **European** patents. (*Id*.) (emphasis in original).

The court in *Astra* was required to determine the law governing claims of privilege. *Astra*, 208 F.R.D. at 98. Several of the challenged documents included communications between the company's Swedish employees and its in-house counsel, forwarding copies of communications with outside German counsel "requesting and rendering legal advice." *Id*. The court found that Germany had the "most compelling interest" in whether the challenged documents were protected from disclosure, and that the application of German law "would not seriously impinge on any significant policy" of the forum. *Id*. at 98–100 (citation omitted). The court found that several other documents "touched base" with the U.S. because they involved communications with American counsel, or concerned the prosecution of patent applications or litigation in the U.S. *Id*. at 99. As to those documents, the court applied U.S. law. *Id*.

In *Golden Trade*, the documents in question were communications between an Italian corporation and patent agents in Norway, Germany, and Israel regarding the processing of patent applications in their respective countries. *Golden Trade*, 143 F.R.D. at 520. The disputed communications in *Golden Trade* did not "touch base" with the United States because they related to matters solely involving foreign countries. *Id*. at 522. The court concluded that foreign countries had the "predominant interest" in whether the challenged communications should remain confidential, and that "enforcement of their laws [in American patent infringement suit] would not seriously impinge on any significant policy [of the forum]." *Id*.

Because FMC AG's Legal Department is located in Germany, the legal advice in this case was rendered in Germany to the company's European personnel. (*See* ECF No. 146 at 2; *see also* ECF No. 145–1, Ex. A [redacted]). The challenged communications, as described on the privilege log generated by Fresenius, concerned "legal advice and analysis" regarding the prosecution of European patent applications, as well as the application of a German statute. (*See* ECF No. 145–1, Ex. A [redacted]; *see also* ECF No. 145 at 8). The principles of *Golden Trade* and *Astra* thus suggest that the challenged communications "touch base" with Germany. *See Astra,* 208 F.R.D. at 98; *Golden Trade*, 143 F.R.D. at 522.

The fact that patent litigation is currently pending in the U.S. is not sufficient to establish a "more than incidental connection to the U.S." *See Gucci*, 271 F.R.D. at 67; *see also Golden Trade*, 143 F.R.D. at 520 (stating that communications "relating to assistance in prosecuting" foreign patent applications or "rendering legal advice ... on the patent law" of a foreign country are governed by privilege law of the foreign country in which the patent application is filed, even if a client is a party to a suit in the U.S.). Because the legal advice in this case was rendered in Germany and related to the prosecution of European patent applications, as well as the application of a German statute, the connection to the U.S. is incidental. *See id*. The communications at issue thus do not "touch base" with the U.S.

The factual record supports the view that the alleged privileged relationship in this case was centered in Germany at the time of the communications. Accordingly, it appears that Germany has "predominant" or "the most direct and compelling" interest in whether the Bichlmaier Documents should be treated as confidential. *See Astra*,

208 F.R.D. at 98; *Golden Trade*, 143 F.R.D. at 522. Consequently, this Court should, as a matter of comity, look to the law of Germany to determine whether the disputed communications are privileged, unless the applicable German law is clearly inconsistent with important policies embodied in federal law. *See Astra*, 208 F.R.D. at 98.

U.S. policy interests contemplate liberal discovery in American lawsuits. *Golden Trade*, 143 F.R.D. at 522. Privilege claims are to be narrowly construed to minimize interference with the parties' ability to have their claims and defenses adjudicated on the merits. *See id*. Courts have also recognized that the attorney–client privilege encourages clients to be forthcoming and candid with their counsel, and ensures that the counsel is sufficiently well–informed to provide sound legal advice. *Astra*, 208 F.R.D. at 103; *see also Golden Trade*, 143 F.R.D. at 522 (citing *United States v. Zolin*, 491 U.S. 554, 562 (1989) (quotation omitted)).

In analyzing compelling U.S. policy interests governing privilege claims in the context of communications with foreign patent agents, the court in *Golden Trade* stated the following:

> [F]oreign patent agents perform services akin to lawyers in their field of specialization. Thus, although most American courts have noted that United States patent agents are not attorneys and hence have held them not to come directly within the scope of the attorney–client privilege, the invocation of a comparable privilege for patent agents–whether domestic or foreign–would not be dramatically inconsistent with the rationale underlying the attorney–client privilege, and indeed [] a number of United States courts have in fact offered such a protection not only for foreign patent agents but for domestic agents as well. *See, e.g., Venitron Medical Prods., Inc. v. Baxter Lab., Inc.*, 186 U.S.P.Q. [324,] 325–26; *In re Ampicillin Antitrust Litig.*, 81 F.R.D. [377,] 393. [The holdings of the quoted cases] illustrate the point that recognizing foreign-law protection for foreign patent agent's communications with their foreign clients concerning the prosecution of foreign patents will not undermine any compelling policy interest reflected in domestic law governing privilege claims.

*Golden Trade*, 143 F.R.D. at 522–23; s*ee also SmithKline Beecham Corp. v. Apotex Corp.*, No. 98 C 3952, 2000 WL 1310668, at *3 (N.D. Ill. Sep. 13, 2000) (stating that the principles of comity and predictability of the attorney–client privilege are violated by the denial of the privilege to foreign patent agents "without reference to either the function they serve in their native system or the expectations created under their local law.").

Despite their title, German patent agents[4] perform services similar to patent attorneys in the U.S., receive confidential legal communications from their clients and render legal advice. Because of the attorney–like functions of German patent agents and because of their clients' expectation of confidentiality, U.S. policy interests will not be violated by recognizing privilege protections under German law for German patent agent's communications with foreign clients concerning the prosecution of European patents. *See SmithKline*, 2000 WL 1310667, at *3.

Fresenius has met its burden to establish the application of German law. *See Golden Trade*, 143 F.R.D. at 522–23. Accordingly, the Court should apply the privilege law of Germany to determine whether the communications in the Bichlmaier Documents are in fact privileged.

### *B. Scope of German Privilege Law*

The Court having determined that German law applies, the burden remains on Fresenius, as the party invoking privilege, to prove that German law protects the communications at issue from disclosure. *See*

---

[4] The title "patent attorney" in Germany is equivalent to "patent agent," and is awarded on the basis of a technical degree, legal training as an apprentice to another patent agent, training at the Patent Office, and passage of an examination. *Golden Trade,* 143 F.R.D. at 524.

1  *id.* at 523.  In support of its privilege claim, Fresenius summarizes the
2  applicable German law as follows:

> "German courts may not compel [] a patent attorney or agent to disclose of produce [] communications [with a client], whether written or oral." ([*Astra Aktiebolag v. Andrx Pharm., Inc.*, 208 F.R.D. 92, 99 (S.D.N.Y. 2002)]); *see also Golden Trade v. Lee Apparel Co.*, 143 F.R.D. 514, 524 [(S.D.N.Y. 1992)] ("German courts may not compel a Patent Attorney to disclose such communications…."); *Softview Computer Products Corp. v. Haworth, Inc.*, 2000 WL 351411, at *11 (S.D.N.Y. 2000) ("German law protects communications between a patent agent and his or her clients."); *McCook Metals L.L.C. v. Alcoa Inc.*, 192 F.R.D. 242, 257 (N.D. Ill. 2000) (same).

9  (ECF No. 145 at 8).  Fresenius also provides as evidence the Declaration
10 of Stefan Weiss, a European patent attorney employed as a Director of
11 Patents at FMC AG.  (*See* ECF No. 146).  Weiss asserts that at the time
12 of the communications at issue, Bichlmaier was a "patent manager" at
13 the Patent Department working under his direction, as well as under the
14 direction of other patent attorneys, to "assist in providing and obtaining
15 legal advice."  (*Id.* at 2).  Fresenius thus asserts that Bichlmaier's
16 communications reflected "legal advice provided by the FMC AG Patent
17 Department."  (ECF No. 145 at 9).

*Legal Standard*

19      In Germany, communications with patent agents are afforded
20 confidentiality, even though patent agents are not admitted to practice
21 law.  *See Willemijn Houdstermaatschaapij BV v. Appolo Computer Inc.*,
22 707 F. Supp. 1429, 1447 (D. Del. 1989); *see also Softview Computer*
23 *Products Corp. v. Haworth, Inc.*, No. 97 Civ. 8815 (KMW)(HBP), 2000
24 WL 351411, at *11 (S.D.N.Y.Mar. 31, 2000) (stating that
25 communications with "German patent agents are protected by the
26 attorney–client privilege to the same extent as communications to [U.S.]
27 attorneys.").  Under German law, written and oral communications
28 between a patent attorney or agent and his clients are deemed

confidential, and German courts may not compel disclosure or production of such communications. *Astra,* 208 F.R.D. at 99; *see also Softview*, 2000 WL 351411, at *11 (stating that "German law protects communications between a patent agent and his or her clients."); *Golden Trade*, 143 F.R.D. at 524 (stating that "German courts may not compel a [p]atent [a]ttorney to disclose confidential communications and a party may not obtain copies of written communications by pre–trial discovery." ).

Several courts have specifically required that the challenged communications "occur in the rendition of legal services for the client," in order to afford confidentiality to the challenged communications under German law. *See McCook Metals L.L.C. v. Alcoa Inc.*, 192 F.R.D. 242, 257 (N.D. Ill. 2000) (quoting *Santrade, Ltd. v. General Electric Co.*, 150 F.R.D. 539, 547 (E.D.N.C. 1993) (stating that German law protects "all communications between a German patent attorney and his client which occur in the rendition of legal services for the client ...."); *see also Astra,* 208 F.R.D. at 98–100 (affording confidentiality to communications between a company's employees and in-house counsel containing copies of the outside counsel's communications "providing legal opinions and conveying legal advice.").

Although other relevant decisions do not contain such specific language, they appear to require some nexus to the rendition of legal advice. For example, in *Softview*, the court refused to extend confidentiality to communications that did not "reflect client confidences," such as status reports regarding defendant's European Patent Office ("EPO") applications, instructions to German patent agent not to obtain a translation of certain documents, counsel's authorization to German agents to proceed with drafting claims for submission to the EPO, and discussions of expected costs of filing for patent protection in

certain European countries. *See Softview*, 2000 WL 351411, at *11. In another case, the court upheld the claim of privilege because the patent inventors, the clients of a German patent agent, established that the challenged communications related to the relevant patent applications, that they expected the communications to be privileged, and relied on this privilege in disclosing information to the agent. *2M Asset Management, LLC v. Netmass, Inc.*, Civ. A. No. 2:06-CV-215, 2007 WL 666987, at *3 (E.D. Tex. Feb. 28, 2007). These cases suggest that German law does not offer a blanket confidentiality protection for all communications between patent agents and their clients, and requires that communications relate to the rendition of legal services.

*Discussion*

Fresenius asserts that "[a]ll of the disputed communications facilitate the solicitation or provision of legal advice, and originate from, or are directed to, Fresenius Patent Department members. The function of the Patent Department is to provide legal advice and, as plainly indicated by [the privilege] log, these documents concern such advice." (ECF No. 145 at 11). The communications over which Fresenius asserts attorney–client privilege are a series of e–mails Fresenius identified on its October 28, 2013, privilege log. (*See* ECF No. 145–1 at 2; *see also* ECF No. 145–1, Ex. A [redacted]). Seven e–mails involved communications between Achleitner and several Fresenius employees. (ECF No. 145–1, Ex. A [redacted]). Bichlmaier was listed as one of the copy recipients on those e–mails. (*Id.*). Five remaining e–mails involved communications between Bichlmaier and Achleitner. (*Id.*). The documents at issue thus reflected communications involving Bichlmaier, a German patent manager, and other Fresenius employees, who were the clients of the FMC AG's Patent Department. (*See id.*).

Fresenius' privilege log describes the content of several of the challenged communications as e–mails "reflecting legal advice and analysis" by the Patent Department concerning a "patent search" and "filing a patent application." (*Id.*). Fresenius describes the content of the remaining e–mails as "reflecting" and/or "requesting" legal advice and analysis by the Patent Department concerning the following: filing a patent application, the results of a patent search, and the application of a German statute. (*Id.*). Pursuant to Fresenius' descriptions on its privilege log, the communications in this case occurred during the rendition of legal services for the client. *See McCook Metals L.L.C. v. Alcoa Inc.*, 192 F.R.D. 242, 257 (N.D. Ill. 2000); *Santrade, Ltd. v. General Electric Co.*, 150 F.R.D. 539, 547 (E.D.N.C. 1993). Accordingly, the Bichlmaier Documents reflected communications between Bichlmaier, a patent manager acting on behalf of the FMC AG's Patent Department, and the Patent Department's clients, and concerned the "rendition of legal services." *See id.*

Fresenius has cited key federal cases that analyze and apply German attorney–client privilege law. (ECF No. 145 at 8). Fresenius has thus provided adequate evidence on the substance of German law in order to establish that it recognizes an evidentiary privilege for communications with German patent agents. *See Golden Trade*, 143 F.R.D. at 523–24. Fresenius also provided Weiss Declaration establishing that Bichlmaier's functions and communications concerned the rendition of legal services. (*See* ECF No. 146 at 2). Plaintiffs had an opportunity to proffer their own version of applicable German law, and have not made such a showing. The Court finds that German law may protect the Bichlmaier documents.

*Plaintiffs' Objections*

*1. Bichlmaier Performed a Scientific Function*

Plaintiffs point out that Bichlmaier was named as an inventor on several Fresenius patent applications filed during his employment as a "patent manager" of the FMC AG's Patent Department. (ECF No. 145–2 at 3) (citing ECF No. 145–1, Exs. L–T, [redacted]). Plaintiffs thus argue that Bichlmaier "performed a scientific function on the Fresenius development team and at least some of his communication were technical in nature." (ECF No. 145–1 at 3).

It is not disputed that Bichlmaier claimed in his October 7, 2009, e–mail to Achleitner, one of the inventors of the patent at issue in this case, to have made an "inventive contribution" to the invention and asked for a five percent share in the invention. (ECF No. 145–1, Ex. D, [redacted]). Bichlmaier's scientific function on the Fresenius development team should not negate the legal function that he contemporaneously performed. It is well recognized that patent applications are among "the most difficult legal instruments to draw with accuracy." *See Sperry v. Florida*, 373 U.S. 379, 383 (1963) (citation omitted). Bichlmaier used his expertise to navigate Fresenius through highly technical scientific and legal aspects of the company's European patent applications, including the patent application at issue. Consequently, Bichlmaier's scientific input should not preclude the finding of confidentiality of the communications in which Bichlmaier was rendering legal advice on behalf of the FMC AG's Patent Department.

*2. Patent Attorneys are not Identified on Fresenius' Privilege Log*

Plaintiffs note Defendant's assertion that Bichlmaier was a "non-lawyer patent manager" purportedly working under the direction of patent attorneys, but point out that "no patent attorneys are identified

in the disputed communications or privilege log." (ECF No. 145 at 3–4). In cases where a patent agent is acting under the "instructions" and the advice of an attorney, the communication, even if received or authored by an agent, is protected because the agent is serving to assist the attorney in providing legal services. *Golden Trade*, 143 F.R.D. at 523.

As Fresenius has demonstrated by way of Declaration of Stefan Weiss, a European patent attorney, the primary role of the Patent Department was to "provide intellectual property related advice to various Fresenius entities around the world." (ECF No. 146 at 2). Bichlmaier "worked at the direction" of the Patent Department's members, including Weiss, "to assist in providing and obtaining legal advice." (*Id.*). Accordingly, the challenged communications were generated on behalf of the Patent Department that included registered patent attorneys, such as Weiss, who shared the responsibility for the prosecution of the patent in question. *See Golden Trade*, 143 F.R.D. at 523.

Fresenius has carried its burden of establishing the preliminary facts necessary to support the existence of the attorney–client privilege under German law. *See id.* at 524. The disputed communications involved Bichlmaier, a German patent manager acting on behalf of FMC AG's Patent Department, and the Patent Department's clients. The description of the disputed communications on the privilege log provided by Fresenius suggests that the communications occurred during the rendition of legal services for the clients of the Patent Department. *See McCook*, 192 F.R.D. at 257. The next step is for the Court to review the documents *in camera* to determine whether privilege has been properly asserted as to each document.

## II.
## *In Camera Review*

Having reviewed the challenged documents *in camera*, the Court finds as follows:

A.   Documents **3** (FRAC0059076-FRAC0059080), **6** (FRAC0059089-FRAC0059093), **9** (FRAC0051118-FRAC0051120), **11** (FRAC0051141), **12** (FRAC0051155-FRAC0051156), **13** (FRAC0050944-FRAC0050945) and **14** (FRAC0059113-FRAC0059117) are privileged and need not be disclosed.

B.   Document **10** (FRAC0051170-FRAC0051172) is privileged except for the communications concerning the filing of the opposition to the Abbott patent. The privileged information may be redacted, and the redacted document must be produced.

C.   Documents **4** (FRAC0051033-FRAC0051035), **5** (FRAC0051067-FRAC0051068), **7** (FRAC0051183-FRAC0051184) and **8** (FRAC0051229-FRAC0051230) are privileged except for the discussions regarding the scheduling of a project team meeting. The privileged information may be redacted and the redacted documents must be produced.

## III.
## *Waiver of Privilege*

Plaintiffs claim that to the extent privilege applies to the Bichlmaier documents, Fresenius waived the privilege because it asserted that it affirmatively designed its NDA Product around Plaintiffs' '222 Patent. (ECF No. 145 at 6) (citation omitted). Fresenius contends that it did not waive the privilege. (ECF No. 145 at 11). Having read the positions of the parties, the Court agrees with the position asserted by Fresenius and finds that there has been no waiver.

## *IV.*

### *Conclusion*

For the foregoing reasons, Plaintiffs' motion to compel, as presented in the instant joint motion, is **DENIED**. The Court will not entertain a motion for sanctions as the Court finds that the motion was substantially justified.

IT IS SO ORDERED.

DATED: February 3, 2014

Hon. Mitchell D. Dembin
U.S. Magistrate Judge