# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CADENCE PHARMACEUTICALS, INC. and SCR PHARMATOP,<br><br>Plaintiffs,<br><br>v.<br><br>FRESENIUS KABI USA, LLC,<br><br>Defendant. | CASE NO. 13-cv-00139 DMS (MDD)<br><br>ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SANCTIONS<br><br>[ECF NO. 218] |

## Background

Before the Court is Defendant's Motion for Sanctions filed on May 20, 2014. (ECF No. 218). Defendant seeks relief based upon Plaintiff Cadence Pharmaceuticals, Inc.'s ("Cadence") violation of the Protective Order entered by this Court on June 10, 2013. (ECF No. 61).[1] Cadence responded in opposition on June 3, 2014. (ECF No. 247). A public, redacted version of the opposition was filed on June 13, 2014. (ECF No. 263). Defendant replied on June 10, 2014. (ECF No. 259). A hearing was held on June 20, 2014. (ECF Nos. 281, 297).

---

[1] The Protective Order has been amended, by agreement of the parties as reflected in the Amended Protective Order signed by this Court on June 23, 2014. (ECF No. 282). The amendment has no bearing on the instant dispute.

- 1 -                                                  13cv139-DMS (MDD)

Facts

A. Relevant Provisions of the Protective Order

The Protective Order was negotiated between the parties and submitted to the Court as a Joint Motion. The Court endorsed the proffered Protective Order without modification. (ECF Nos. 48, 61).

As agreed by the parties, only "counsel of record," as defined in the Protective Order, were authorized to see information designated as "attorneys' eyes only." (ECF No. 61 ¶ 8). "Counsel of record" was defined to include litigation counsel and necessary staff in this case and "two designated in-house legal counsel for each Party of Record who have responsibility for maintaining, defending or evaluating this litigation but who do not have involvement in initiating or prosecuting patent applications or reexamination proceedings relating to injectable formulations of acetaminophen . . . ." (*Id.* ¶ 3). Lists of approved personnel were required to be exchanged along with appropriate certifications. (*Id.*). Each party was required to take reasonable precautions to prevent unauthorized or inadvertent disclosure. (*Id.* ¶ 15). The Order also included a "prosecution bar" preventing any individual receiving access to "confidential" or "attorneys' eyes only" information from participating or having any involvement in patent office proceedings relating to injectable formulations of acetaminophen for two years after termination of this lawsuit. (*Id.* ¶ 19).

A party objecting to a confidential designation was required to notify opposing counsel in writing and, absent resolution, bring the matter before the Court within seven days. (*Id.* ¶ 14). The parties also agreed that the restrictions and obligations of the Protective Order would not apply to any confidential information that is public knowledge or has become public knowledge other than as a result of disclosure by

the receiving party. (*Id.* ¶ 29).

B. <u>Cadence's Breach of the Protective Order</u>

The relevant facts of Cadence's breach of the Protective Order largely are undisputed. The only real dispute, in that regard, is whether an amendment filed to one of Cadence's patents-in-suit during reexamination before the U.S. Patent and Trademark Office ("PTO") was influenced by information learned as a result of the breach.

The facts are as follows:

1. On January 10, 2014, Defendant served upon Plaintiffs the Responsive Expert Report of Dr. Yaman and designated the entire report "attorneys' eyes only." (ECF No. 218-1 at 9[2]). Dr. Yaman's responsive expert report opined that Defendant's product and manufacturing process do not infringe Plaintiff's patent designated as '218. (*Id.*)

2. On February 6, 2014, litigation attorney Darryl Steensma and paralegal Kristen Fechner of the law firm Latham & Watkins, counsel of record for Plaintiff Cadence, electronically provided the restricted Yaman report to Hazel Aker, the general counsel of Cadence. (ECF No. 218-3, Exh. I). The report was included, along with non-confidential information, to Ms. Aker as part of a periodic update from litigation counsel. (*Id.*) Ms. Aker was not authorized, pursuant to the Protective Order, to receive information designated attorneys' eyes only. (*Id.*)

3. That same day, Ms. Aker electronically provided the materials that she had received, including the restricted Yaman report, to two law firms representing Cadence before the PTO - Wilson Sonsini Goodrich and Rosati ("Wilson") and Hunton & Williams LLP ("Hunton"). The

---

[2] The Court will use the page numbering as filed in CM/ECF rather than the original pagination.

provided documents were downloaded by three attorneys at the Wilson firm, Jeff Vockrodt, Matt Grumbling and Jeff Guise. (*Id.*) Due to a technical problem, Ms. Aker made the documents electronically available again to Mr. Vockrodt on February 12, 2014. Only Messrs. Vockrodt and Grumbling reviewed the Yaman report. (*Id.*)

4. On February 25, 2014, the Yaman report was filed in the docket regarding the re-examination of the '222 patent at the PTO. (*Id.* Exh. C).

5. On February 25, 2014, Mr. Vockrodt filed the Declaration of Dr. William Craig with the PTO regarding the '222 patent. (*Id.* Exh. D). On February 28, 2014, Plaintiff Pharmatop, through Mr. Vockrodt, submitted an amendment to the '222 patent. (*Id.* Exh. E).

6. Counsel for Defendant noticed that the restricted Yaman report was filed in the PTO docket during a routine docket review in late March 2014. Counsel for Cadence was notified on April 1, 2014. (ECF No. 218-1 at 9).

7. Counsel for Cadence promptly investigated the matter and reported the results to Defendant. (ECF No. 218-3, Exh. I). The Yaman report was expunged from the PTO docket on May 5, 2014, and was never disclosed publicly. (ECF No. 263 at 11). Ms. Aker no longer is employed by Cadence and the Wilson and Hunton law firms have been replaced by the firm Mayer Brown. No one from Mayer Brown has been exposed to the Yaman Report. (ECF No. 218-3, Exh. H).

8. Counsel for Cadence offered to make the involved individuals available for interview or deposition by Defendant. Defendant declined the invitation.

<u>Discussion</u>

The parties agree that the Protective Order was violated and that

the offensive conduct was unintentional.  The parties diverge regarding the impact of the breach and the need for and nature of any remedial sanction.

Fed. R. Civ. P. 37(b)(2) authorizes the Court to impose sanctions for failing to obey discovery orders, including orders issued under Rule 26(f).  Rule 26(f) authorizes the Court to issue protective orders under Rule 26(c).  The Protective Order in this case was issued under the auspices of Rule 26(c).  Accordingly, the Court may impose sanctions, including those provided under Rule 37(b)(2)(A) as a consequence of the breach of the Protective Order.

Defendant disclaims any desire for monetary sanctions, other than costs and fees incurred in connection with its investigation of the breach and bringing the matter before the Court.  As stated by Defendant:

> No monetary award can compensate [Defendant] Fresenius for the risk that Plaintiffs have used, or may use, Fresenius's own confidential material to decide how to best draft or amend the claims of the patents-in-suit to ensure that the claims come as close as possible to reading on Fresenius's confidential product and manufacturing process.

(ECF No. 218-1 at 5).  Rather, Defendant requests the Court to order that Plaintiffs may not assert against Defendant any new or amended claim resulting from the re-examination of the patents-in-suit which were brought after the date of the breach.  (*Id.*).  Defendant has not requested enforcement of the Prosecution Bar against any of the individuals involved in the breach.

At the hearing on this matter, the Court advised Defendant that there is no evidence that the Declaration of Dr. Craig, filed by Mr. Vockrodt after the breach, was influenced by information obtained from the Yaman Report.  Defendant did not press that issue and instead focused on the amendment to the '222 patent.  The amendment was filed by Mr. Vockdrodt and narrowed one of the claims of the '222 patent.

Defendant asserts that the manner in which Mr. Vockrodt decided to frame the narrowed claim may have been influenced by his review of the Yaman Report. Defendant asserts that it is precisely because it is unknown whether and to what extent Mr. Vockrodt may have been influenced, even subconsciously, by his review of the Yaman Report, that the relief sought is warranted. The "Vockrodt Amendment" has been superseded by later amendments but Defendant asserts that the later amendments may have been influenced by the possibly tainted language of the Vockrodt Amendment.

Cadence asserts that there is nothing in the Vockrodt Amendment that suggests that it was influenced by the Yaman Report. And, without bad faith or intentional misconduct, the relief sought by Defendant is far too punitive. Cadence also challenges the confidentiality of certain information in the Yaman Report. The time to raise that challenge, however, was prior to disclosure and is not appropriate as a defense to disclosure.

Defendant's arguments are appealing and the remedy sought is clear and enforceable. There was not simply a single inadvertent breach. The initial breach, the inadvertent disclosure by Latham & Watkins to Ms. Akers, was compounded by Ms. Aker's inadvertent disclosure to outside counsel. The Wilson attorneys took the matter a step further by actually viewing the document, labeled "attorneys' eyes only," and then filing it with the PTO. The Court finds that the compounding of the original inadvertent disclosure rises beyond mere inadvertence and into the realm of negligence. That the breach was discovered by Defendant, and not by Cadence, also suggests negligence.

The Court grants Defendant's motion to the extent that Cadence will be required to reimburse Defendant for costs and reasonable

attorneys' fees in investigating the breach and presenting this motion to the Court. If the parties cannot agree regarding the costs and fees, Defendant may make appropriate application to the Court.

The Court will not enjoin Cadence from enforcing new claims or amendments to claims of the '218 and '222 patents against Defendant which were filed post-breach at this time. Defendant asserts that any pre-breach claims that remain valid following PTO review are enforceable against it and all valid claims are enforceable against other alleged infringers. Consequently, Defendant asserts that the relief neither is overbroad nor unnecessarily punitive. Cadence states that without bad faith or without evidence that the amendments somehow drew on the restricted knowledge provided by the Yaman Report, the litigation advantage accorded to Defendant is unwarranted. Cadence, however, proposes no alternative.

The only potential "taint" left in the case is from the Vockrodt Amendment. Having reviewed the amendment, the Court cannot say that it was influenced by the Yaman Report. The Court has some familiarity with the patents-in-suit and it appears that the amendment is the natural consequence of the re-examination and nothing about it suggests corruption. Inasmuch as Defendant decided not to interview or depose Mr. Vockrodt, a determination of credibility is out of the question.

It also is interesting that Defendant chose not to seek an order enforcing the prosecution bar of the Protective Order against attorneys Vockrodt and Grumbling, the only non-authorized persons known to have reviewed the confidential Yaman report. Even though their firm is no longer representing Cadence before the PTO, the Prosecution Bar would prohibit them from any involvement in patent office proceedings relating to injectable formulations of acetaminophen for two years after

termination of this lawsuit.   One would think that if Defendant was so concerned regarding misuse of their confidential information, that they would want an order prohibiting these attorneys from representing anyone in patent proceedings regarding injectable acetaminophen.  Such an order, however, would not give Defendant any potential advantage in the instant litigation.

At this point, the extent to which the patents-in-suit or any post-breach new or amended claim of either patent will survive re-examination is not known.  Consequently, the request for injunctive relief is premature.  Accordingly, the Court denies that aspect of Defendant's motion without prejudice.  Defendant may seek an order prohibiting Cadence from asserting any surviving '218 or '222 patent claim filed or amended following the date of the breach before trial in this case.  Such a renewed motion must be based on something more than speculation.

## Conclusion

The Protective Order has been breached by Cadence and the circumstances are sufficient to justify the imposition of sanctions. Defendant's Motion for Sanctions is GRANTED IN PART AND DENIED IN PART.  Defendant's motion is GRANTED to the extent that Cadence shall reimburse Defendant for costs and reasonable attorneys' fees in investigating the circumstances of the breach and bringing the matter before the Court.  To the extent that the parties have a dispute regarding the appropriate reimbursement, that matter can be brought before the Court in a joint motion.

Defendant's request for an order prohibiting Cadence from enforcing any new claim or amendment to the patents-in-suit filed with the PTO post-breach against Defendant is DENIED WITHOUT

PREJUDICE.  Defendant may choose to re-file depending upon the outcome of the re-examination of the patents-in-suit.

    IT IS SO ORDERED.

DATED: July 8, 2014

> Hon. Mitchell D. Dembin
> U.S. Magistrate Judge